# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **OMS3 LLC,** | : | |
| | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **No. 18-3505** |
| | : | |
| **CARESTREAM DENTAL, LLC,** | : | |
| | : | |
| **Defendant.** | : | |

Goldberg, J.                                                                                                              May 20, 2019

## MEMORANDUM OPINION

Plaintiff OMS3, LLC, a Pennsylvania software company, brought this breach of contract action against Defendant Carestream Dental, LLC, a technology company based in Georgia. Defendant has moved to transfer the case to the United States District Court for the Northern District of Georgia, pursuant to 28 U.S.C. § 1404(a), which permits transfer to another venue "[f]or the convenience of parties and witnesses, [and] in the interest of justice." Plaintiff opposes transfer to Georgia, arguing that Defendant has not met its heavy burden of demonstrating that Georgia is the more appropriate venue. For the reasons that follow, I agree with Plaintiff and will deny Defendant's motion.

### I.     FACTUAL & PROCEDURAL BACKGROUND

The following facts are derived from Plaintiff's Complaint.

Plaintiff is "a technology company that offers products and services to the healthcare market, including . . . software to manage medical information and educational courses for medical professionals and their staff." Defendant is "a technology company that provides . . . digital products

lines and services, and is the business of manufacturing, distributing, selling, and licensing products and services." (Compl. ¶¶ 5, 7.)

In 2012, Plaintiff and Defendant entered into a "Marketing Agreement," under which Defendant "agreed to provide certain marketing, promotional, technical, data-related, and other services to [Plaintiff]." These services relate to a software product that Plaintiff developed, called "Practice Pilot." Among other things, Defendant agreed to "market [Practice Pilot] to [its] . . . oral and maxillofacial surgery customers," to "use its direct sales force to promote sales of [Practice Pilot]," and to "collaborate with [Plaintiff] on joint marketing efforts, including an annual direct mail campaign, an annual email campaign, a quarterly email message, and appearances at trade shows." Defendant also agreed not to promote products that compete with Practice Pilot. In exchange for these services and guarantees, Plaintiff agreed to pay Defendant a commission on sales of Practice Pilot, and to offer the product exclusively through Defendant to be sold alongside Defendant's own software. (Compl. ¶¶ 12-24.)

Plaintiff alleges that Defendant breached the Marketing Agreement by, among other things, failing to refer prospective customers to Plaintiff, failing to use its sales force to promote Practice Pilot, and promoting a competing product. (Compl. ¶¶ 27-43.)

Plaintiff initiated this action on July 10, 2018, in the Court of Common Pleas of Montgomery County. Defendant then removed the case to this Court based on diversity of citizenship. Thereafter, Defendant filed the instant motion under 28 U.S.C. § 1404(a) to have venue transferred to the Northern District of Georgia.

Defendant argues that transfer to the Northern District of Georgia is appropriate under § 1404(a), because "the vast majority of the alleged acts that constitute the alleged breach of contract occurred in the state of Georgia; many of the material witnesses are located in Georgia or nearby Georgia, and the Parties expressly agreed [in the Marketing Agreement] that Georgia law will

govern" the dispute. (Def.'s Mem. in Supp. 1.) Plaintiff disagrees that transfer is appropriate, arguing, among other things, that its choice to litigate the case in its home state of Pennsylvania is entitled to great weight, and that, while some witnesses are residents of Georgia, and some acts occurred in Georgia, other witnesses are located in Pennsylvania, and other relevant actions occurred in Pennsylvania and elsewhere. Accordingly, Plaintiff argues, Defendant cannot meet its heavy burden under § 1404(a) of demonstrating that Georgia is the more appropriate venue.

For the reasons set out below, I agree with Plaintiff and will deny Defendant's motion to transfer venue.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1404(a), a district court may transfer an action to any other district "where it might have been brought" if this transfer is "for the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). The determination of whether to transfer venue pursuant to § 1404(a) is governed by federal law. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 877–878 (3d Cir. 1995).

Analysis of a request for a § 1404(a) transfer has two components. First, both the current venue and the requested venue must be proper. Jumara, 55 F.3d at 879. Venue is proper in: (1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) a judicial district in which a substantial part of the property that is the subject of the action is situated. 28 U.S.C. § 1391. A business entity resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." Id. § 1391(c)(2); see also Johnson v. Equifax Info. Servs., LLC, No. 17-066, 2017 WL 2779568, at *2 (E.D. Pa. June 27, 2017).

3

Second, the purpose of allowing § 1404(a) transfers is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Mosaid Techs., Inc. v. Sony Ericsson Mobile Commc'ns (USA), Inc., 885 F. Supp. 2d 720, 723 (D. Del. 2012) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (further quotations omitted)). Accordingly, at step two, the court must undertake a balancing test comprised of various public and private interest factors. See Jumara, 55 F.3d at 879. However, in conducting this balancing test, the court must be mindful that the party seeking transfer bears "[t]he burden . . . to show the desirability of transferring venue and to present evidence upon which the court may rely in justifying transfer." Coppola v. Ferrellgas, Inc., 250 F.R.D. 195, 197 (E.D. Pa. 2008).[1]

The burden is a heavy one: "[U]nless the balance of convenience of the parties is *strongly* in favor of [the] defendant, the plaintiff's choice of forum should prevail." Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (emphasis added); see also Jumara, 55 F.3d at 897 ("[I]n ruling on defendants' motion [to transfer venue] the plaintiff's choice of venue should not be lightly disturbed.").[2]

---

[1] In deciding a § 1404(a) motion, a court may consider "documents, affidavits, or statements concerning the availability of material witnesses, relative ease of access to evidence, and business or personal hardships that might result for the moving parties." Fellner ex rel. Estate of Fellner v. Phila. Toboggan Coasters, Inc., No. 05-cv-1052, 2005 WL 2660351, at *4 (E.D. Pa. Oct. 18, 2005).

[2] Defendant maintains that it "is not required 'to show truly compelling circumstances for change of venue, but rather that all relevant things considered, the case would be better off transferred to another district.'" (Def.'s Mem. in Supp. 7 (quoting In re United States, 273 F.3d 380, 388 (3d Cir. 2001)). However, at issue in In re United States was not a motion for transfer of a civil matter under 28 U.S.C. § 1404(a), but rather a motion for transfer of a criminal matter under Federal Rule of Criminal Procedure 21(b). While the court in In re United States recognized "the similarity between the language" of the two provisions, the holding in that case does not supply the standard here. 273 F.3d at 388. Rather, to the extent that the standard set out in In re United States differs from that set out in Shutte and Jumara, as discussed above, I apply the latter.

## III. **DISCUSSION**

As an initial matter, the parties agree that venue is proper both in this district and in the proposed transferee district, the Northern District of Georgia. Venue is proper in both districts because Defendant is subject to personal jurisdiction in both states, and thus "resides" in both for purposes of the general venue statute. See 28 U.S.C. § 1391(b)(1), (c)(2).

Having determined that venue is proper both in this district and the Northern District of Georgia, I must now determine whether the balance of public and private interest factors set out in Jumara weighs heavily in favor of transfer. The private interest factors include: (1) the plaintiff's forum preference as manifested in its original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial conditions; (5) the convenience of the witnesses; and (6) the location of books and records. Jumara, 55 F.3d at 879. The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) considerations of administrative difficulty resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. Id.

### A. *The Private* Jumara *Factors*

#### 1. Plaintiff's Forum Preference

The analysis begins with an examination of Plaintiff's choice of venue, as manifested by where the suit was originally brought. As a general rule, a plaintiff's choice of venue is of paramount importance and "should not be disturbed lightly." In re Amkor Tech., Inc. v. Sec. Litig., No. 06-298, 2006 WL 3857488, at *3 (E.D. Pa. Dec. 28, 2006) (quoting Weber v. Basic Comfort, Inc., 155 F. Supp. 2d 283, 285 (E.D. Pa. 2001)). That choice is given greater weight where the plaintiff

chooses to litigate in its home forum. See Gore v. Stryker Corp., No. 09-2987, 2010 WL 3069653, at *3 (E.D. Pa. Aug. 4, 2010).

In this case, Plaintiff chose to bring this action in its home forum, as it is a Pennsylvania-based limited liability company. Accordingly, I note that this paramount consideration weighs heavily against Defendant's requested transfer.

### 2. Defendant's Forum Preference

The second factor—the defendant's forum choice—is "entitled to considerably less weight than [the plaintiff's], as the purpose of a venue transfer is not to shift inconvenience from one party to another." EVCO Tech. and Dev. Co. v. Precision Shooting Equip., Inc., 379 F. Supp. 2d 728, 730 (E.D. Pa. 2003) (citations omitted). Thus, while Defendant's preference for litigating this matter in its home forum of Georgia does weigh somewhat in favor of transfer, this preference bears "considerably less weight" than Plaintiff's preference to litigate the matter in this district.

### 3. Whether the Claim Arose Elsewhere

For purposes of venue, a breach of contract claim is said to have arisen at the place of performance. See Myers v. Jani-King of Philadelphia, Inc., No. 09-cv-1738, 2012 WL 6058146, at *4 (E.D. Pa. Dec. 5, 2012). However, the parties dispute where the Marketing Agreement at issue was performed. Defendant maintains that its performance relevant to this action—its marketing of Plaintiff's product, and the integration of that product with Defendant's own product—occurred at Defendant's headquarters in Georgia. Defendant supports this claim with a declaration from its "Director of eServices," Lon Taylor, who asserts generally that Defendant's "marketing coordination and performance, sales administration, and technology integration primarily occurred in Georgia." (Taylor Decl. ¶ 15.) Plaintiff responds that "the sales contemplated by the Agreement would have occurred in Pennsylvania but for [Defendant's] breach," and supports this with a declaration from its CEO, Sean Wild, who adds that "marketing-related discussions and interactions

by and between [Plaintiff] and [Defendant] were largely by telephone or email with [Plaintiff's] representatives . . . in Pennsylvania or at marketing related-events throughout the country." (Pl.'s Opp'n 14 (citing Wild Decl. ¶¶ 19–22.))

While several aspects of Defendant's performance of the Marketing Agreement occurred in Georgia, other aspects—such as the promotion of Plaintiff's product at "marketing-related events"—occurred in other places around the country. Accordingly, I conclude that this factor marginally supports transfer.

### 4. Convenience of the Parties as Indicated by Their Relative Conditions

I next consider "the convenience of the parties as indicated by their relative physical and financial condition." Jumara, 55 F.3d at 879. However, Defendant has put forward no evidence of its financial condition—relative to Plaintiff's—that would suggest that it would incur a much greater hardship than Plaintiff in litigating this matter away from its home forum. Accordingly, this favor does not weigh in favor of transfer, and is, at best, neutral.

### 5. Convenience of Non-Party Witnesses

The convenience of non-party material witnesses "is a particularly significant factor in a court's decision whether to transfer." Idasetima v. Wabash Metal Prods., Inc., No. 01–97, 2001 WL 1526270, at *2 (E.D. Pa. Nov. 29, 2001). However, the parties dispute whether this factor favors transfer in this case. Defendant maintains that "[t]he majority of material witnesses, to include [Defendant's] current and former employees, with knowledge of the Agreement and this dispute are located in Georgia." (Def.'s Mem. 6.) But Defendant's memorandum only specifically discusses two of its employees who reside in Georgia, Sue Griffin and Robert Patrick. And in its supporting declaration from Mr. Taylor, Defendant only vaguely asserts that "the vast majority of material non-party fact witnesses . . . are located in or near Georgia," and that Defendant "anticipates at least four

7

non-party fact witnesses, who reside in or nearby Georgia, to be called at trial." (Taylor Decl. ¶¶ 6-7.)

On the other hand, Plaintiff submits that two of its own executives—Mr. Wild, as well as its Chief Operating Officer, Charles Burns—are key witnesses, and are based in Pennsylvania. (Pl.'s Opp'n 7 (citing Wild Decl. ¶¶ 5-21.)) Moreover, Plaintiff notes that, of the four employees of Defendant that served as its "key contacts" for purposes of the Marketing Agreement, only two worked out of Georgia—the other two worked out of Texas and New York. (Pl.'s Opp'n 6-7 (citing Wild Decl. ¶ 21.)

In sum, while some of the witnesses in this matter—perhaps even a majority—reside in Georgia, others reside in Pennsylvania or elsewhere. Accordingly, I conclude that this factor, at most, supports transfer only marginally.

6. Location of Books and Records

The final private factor is the location of books and records. Generally, this factor is given little weight "as technological advances 'have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded . . . and have lowered the cost of moving that information from one place to another.'" Papbst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp., 126 F. Supp. 3d 430, 443 (D. Del. 2015) (quoting Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc., No. 01-199, 2001 WL 1617186, at *3 (D. Del. 2015)). Accordingly, while Defendant maintains that "many of the original documents and information related to the Agreement are located in Georgia," this factor does not weigh heavily in favor of transfer. (Def.'s Mem. in Supp. 6.) Indeed, both Plaintiff and Defendant are technology companies that appear to have conducted much of their business by email and telephone.

### B. *The Public* Jumara *Factors*

1. The Enforceability of the Judgment

As to the enforceability of the judgment, Plaintiff concedes that "execution on a judgment against [Defendant] may involve transferring the judgment from [this district] to the location of [Defendant's assets]," which are not located in Pennsylvania, but maintains that this factor does not outweigh its choice of forum. (Pl.'s Opp'n 16.) I agree with Plaintiff that, to the extent that this factor favors transfer, it does not favor transfer strongly.

2. Practical Considerations Regarding Expediency and Efficiency of Resolution, and Administrative Difficulty Due to Court Congestion

As to the second and third public interest factors, the parties offer little that has not already been addressed in other factors. Plaintiff notes that Defendant has not offered any evidence supporting these factors, and adds only that the Eastern District of Pennsylvania is "one of the fastest moving dockets in the country," which counsels against transfer. (Pl.'s Opp'n 17.) I conclude that this factor does not weigh heavily in favor of either party.

3. Local Interest in the Controversy, Public Policies of the Fora, and the Judge's Familiarity With the State Law at Issue

As to the final three public interest factors, Defendant relies heavily on the fact that the Marketing Agreement at issue includes a choice-of-law clause, under which Georgia law will govern this dispute. Accordingly, Defendant argues, Georgia has a greater interest in the controversy, and a judge of the Northern District of Georgia will be more familiar with the applicable law.

Plaintiff responds that this does not weigh heavily in favor of transfer to the Northern District of Georgia because the matter is "a straightforward breach of contract lawsuit," that does not present a "novel or complex issue of Georgia law." (Pl.'s Opp'n 18.) I find that, while these factors do weigh in favor of transfer, they do not weigh heavily. Contract law does not vary wildly by

9

jurisdiction, and Defendant has not identified any specific issue in this litigation in which the Georgia public has a particularly substantial interest. Accordingly, I conclude that these factors support transfer only marginally.

## IV. CONCLUSION

Having considered the parties' briefing and exhibits, I find that while a few of the public and private interest factors marginally support transfer to the Northern District of Georgia—specifically, Defendant's preference to litigate in its home forum, the enforceability of a judgment against Defendant in this district, and the fact that Georgia law will govern this action—these factors do not outweigh the paramount consideration I must give to the fact that Plaintiff has chosen to litigate this case in its home forum. Accordingly, I will deny Defendant's motion to transfer this matter.

An appropriate order follows.