**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **OMS3, LLC,** | **Case No.  2:18-cv-03505-JDW** |
| *Plaintiff* | |
| v. | |
| **CARESTREAM DENTAL, LLC,** | |
| *Defendant* | |

## MEMORANDUM

Freedom of contract allows parties to bargain and create terms that they desire. OMS3 LLC and Carestream Dental, LLC exercised that freedom when they entered into a Marketing Agreement that barred either party from recovering consequential damages. Now, that contractual choice will bar OMS3 from recovering damages for an alleged breach of the Marketing Agreement. Like ants floating in outer space, OMS3 is left to say, "Freedom! Horrible, horrible freedom!"[1]

### I.    FACTS

OMS3 and Carestream provide software solutions for medical providers. Carestream sells a product called "WinOMS," which provides back office support for oral and maxillofacial surgery practices. OMS3's "Practice Pilot" draws on WinOMS data to offer data visualization in a dashboard format.

---

[1] The Simpsons: Deep Space Homer (Fox TV Broadcast Feb. 24, 1994).

In 2012, OMS3 and Carestream entered into a Marketing Agreement, which enabled OMS3 to integrate Practice Pilot with WinOMS and which gave Carestream the exclusive right to market Practice Pilot. Section 5 of the Marketing Agreement governs the parties' exclusive marketing commitments. It provides that OMS3 will not offer Practice Pilot to any company other than Carestream offering oral surgery practice management software products. (ECF No. 106-1 at § 5(a). In exchange, Carestream

> commits to refer prospective customers to OMS3 in sufficient quantities so that OMS3 will close sales. . . in the following quantities:
>
> (i) by the end of the first year after the Effective Date: at least 143 primary licenses sold; and
>
> (ii) by the end of second year after the Effective Date: at least 285 primary licenses sold (in aggregate, including year 1 sales)"

(*Id.* at § 5(b)(ii).) If OMS3 does not achieve these sales targets, then the Marketing Agreement gave it the option to terminate the exclusive marketing commitment that it made. (*Id.* at § 5(c).) The Marketing Agreement provides, "Neither party will be liable to the other for any incidental, consequential or special damages under this Agreement." (*Id.* at § 7.) It also includes an integration provision and a Georgia choice-of-law provision. (*Id.* at §§ 12(c), (f).)

OMS did not close the expected number of sales in either of the first two years of the Marketing Agreement. The parties dispute how many referrals Carestream made, but that dispute is not material to the Court's resolution of this dispute.  On July 10, 2018, OMS3 filed this suit in Pennsylvania state court against

Carestream, alleging a breach of contract claim and seeking damages due to Carestream's alleged failure to refer enough potential customers to OMS3.

Carestream removed the case to this Court. The parties have filed cross-motions for summary judgment, and Carestream has filed a motion to exclude the testimony of one expert witness. All of those motions are ripe for decision.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted).  In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted).  However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). "When confronted with cross-motions for summary judgment 'the court must rule

on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Canal Ins. Co. v. Underwriters at Lloyd's London*, 333 F. Supp. 2d 352, 353 n.1 (E.D. Pa. 2004), *aff'd*, 435 F.3d 431 (3d Cir. 2006).

## III.   ANALYSIS

"Pennsylvania courts generally honor the parties' choice of law provisions." *Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916, 920 (Pa. Super. Ct. 2002). The Agreement contains a Georgia choice-of-law clause, and the parties agree that Georgia law applies. The Court will apply Georgia law. To prove a claim of breach of contract under Georgia law, OMS3 must show "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Najarian Capital, LLC v. Milford*, -- S.E.2d --, 2020 WL 6110626, at * 4 (Ga. Ct. App. Oct. 16, 2020).

Under Georgia law, "[a]bsent a public policy interest, contracting parties are free to contract to waive numerous and substantial rights, including the right to seek recourse in the event of a breach by the other party." *Imaging Sys. Intern., Inc. v. Magnetic Resonance Plus, Inc.*, 490 S.E.2d 124, 127 (Ga. Ct. App. 1997) (quote omitted). "[T]o the extent that consequential damages are recoverable in breach of contract actions, a clause excluding such damages is valid and binding unless prohibited by statute or public policy." *US Nitrogen, LLC v. Weatherly, Inc.*, 343 F. Supp.3d 1354, 1363 (N.D. Ga. 2018) (quoting *Silverpop Sys., Inc. v. Leading Mkt. Techs., Inc.*, 641, F. App'x 849, 957 n.9 (11th Cir. 2016)). The

parties included such an exculpatory provision in the Marketing Agreement, and neither party suggests that any statute or public policy bars its enforcement. So the Court will enforce it.

That provision bars OMS3's claim for lost profits.  Georgia law recognizes two types of lost profits as damages: "(1) lost profits which are direct damages and represent the benefit of the bargain (such as a general contractor suing for the remainder of the contract price less his saved expenses), and (2) lost profits which are indirect or consequential damages. . . ." *Imaging Sys. Int'l*, 490 S.E.2d at 127. Lost profits that can be "traced solely" to the breach of the contract are direct damages. *See id*. But when damages depend on factors not determined by the contract itself, they are consequential.  *See id*; *Atlantech Inc. v. Am. Panel Corp.*, 743 F.3d 287, 294 (1st Cir. 2014) (applying Georgia law).

OMS3's damages fall into the second category. Its profits would have come from sales to customers that Carestream referred to it. But OMS3's ability to realize those sales depended on more than just receiving a referral from Carestream. It had to close the sale after the referral, and its ability to do so depended on a range of non-contractual factors, such as price, quality, the availability of substitutes, and the skill of OMS3's sales force. In that regard, it is important to note that Carestream did not have a contractual obligation to ensure that OMS3 made a certain number of sales. It only had an obligation to refer to OMS3 enough customers to permit OMS3 to make an expected number of sales. Carestream could have complied with that obligation (and might have,

depending on the resolution of certain factual questions) even if OMS3 did not close those sales.

OMS3's other claimed damages, for lost business opportunities and lost goodwill, also fall within the scope of the Marketing Agreement's bar on consequential damages. *See Imaging Sys.* Int'l, 490 S.E.2d at 127. Because the Marketing Agreement bars all of the damages that OMS3 seeks, OMS3 cannot prove the damages element of a breach of contract claim.

Although the resolution of this issue does not turn on the interpretation of the Marketing Agreement, which is unambiguous as to the bar on consequential damages, the Court notes that this outcome is consistent with the structure of the contract as a whole. The agreement requires Carestream to refer potential customers to OMS3 and gives OMS3 the opportunity to realize sales from those referrals. If OMS3 cannot make enough sales, its remedy was an option to terminate the exclusive marketing commitment it made to Carestream. That structure makes sense given both the limit on consequential damages and the difficulty in translating Carestream's commitment to refer potential customers to OMS3's ability to close any particular deal. OMS3 elected not to exercise that non-pecuniary remedy for business reasons, but that does not change the fact that it had the option. In any event, OMS3 has not identified any recoverable damages. Its breach of contract claim fails as a result.

## IV.     CONCLUSION

OMS3 chose to bargain away its right to seek consequential damages. Freedom might be horrible, but it is enforceable. And because the only damages it seeks are consequential damages, it cannot recover for breach of contract under Georgia law. The Court will therefore grant Carestream's summary judgment motion and deny OMS3's partial motion. The Court will also deny as moot Carestream's motion to exclude expert testimony. An appropriate Order follows.

**BY THE COURT:**

_/s/ Joshua D. Wolson_
JOSHUA D. WOLSON, J.
United States District Judge

October 30, 2020